UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROMELIO INOCENCIO DAWKINS WHITTAKER,

v. Case No. 8:05-cr-99-T-24EAJ
8:06-cv-1656-T-24EAJ

UNITED STATES OF AMERICA.

---

O R D E R

This cause is before the Court on Defendant Whittaker's amended motion to vacate, set aside, or correct an allegedly illegal sentence pursuant to 28 U.S.C. § 2255. Doc. cv-4; cr-148. The Government filed a response in opposition to the motion to vacate. Doc. cv-8. Whittaker did not file a reply to the response.

Background

On April 19, 2005, Whittaker pled guilty, pursuant to a plea agreement, to one count of conspiracy to possess with intent to distribute five kilograms or more of cocaine while aboard a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. App. §§ 1903(a), (g) and (j), 18 U.S.C. § 2, and 21 U.S.C. § 960(b)(1)(B)(ii) (Count One). Docs. cr-76 (Judgment); cr-1 (Indictment); cr-27 (Plea Agreement); cr-150 at 36-37 (Transcript of Change of Plea Hearing).

Pursuant to the plea agreement, Whittaker expressly waived his right to appeal his sentence:

> . . .or challenge it collaterally on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by Title 18 United States Code, Section 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by Title 18 United States Code, Section 3742(a).

Doc. cr-27, p. 12, ¶ 5.

On August 25, 2005, this Court sentenced Whittaker to 108 months incarceration. Doc. cr-76 (Judgment). Judgment was entered that same day, August 25, 2005. Whittaker did not file a direct appeal.

On September 8, 2006, Whittaker filed his original section 2255 motion and supporting memorandum of law. Doc. cv-1. The Court ordered Whittaker to file an amended section 2255 motion in compliance with instructions on the form. Doc. cv-2.

On October 16, 2006, Whittaker filed his amended section 2255 motion, raising the following grounds for relief:

> a. Whittaker received ineffective assistance of counsel;
>
> b. the Court erred at sentencing in not granting Whittaker a downward departure for minor role;
>
> c. the Court should have granted Whittaker a downward departure for extraordinary family circumstances; and
>
> d. the Court should have granted Whittaker a downward departure due to his deportability.

Doc. cv-4, at 4-8.

Discussion

A review of the record demonstrates that, for the following reasons, Whittaker's amended motion to vacate must be **DENIED**.

Ineffective Assistance of Counsel

In ground one, Whittaker alleges:

> that his attorney failed in his duties in that he did not explain the consequences of a plea agreement prior to its signing, failed to request an evidentiary hearing during the RULE 11 change of plea as well as at the sentencing. Failed to argue for departure based on COLLATERAL CONSEQUENCES pursuant to 18 USC § 3553(a) & (b), § 5k2.0(a)(1), (2), (3), and (4). A poor attempt at getting a MINOR ROLE departure as promised. All parties were well aware of the small role the defendant played as evidence of the cooperation and assistance had proved. Mr. Whittaker was sentenced based on a mandatory sentencing scheme. Under advisory, there is a reasonable probability the court would of [sic] imposed a lower sentence. (BOOKER ERROR).

Doc. cv-4, p. 5.

The Sixth Amendment right to counsel is the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). The benchmark for judging any claim of ineffective assistance of counsel, however, is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *see also Boykins v. Wainwright*, 737 F.2d 1539, 1542 (11th Cir. 1984). The burden is on the defendant to demonstrate that (1) counsel's performance fell below an objective standard of reasonable professional assistance and (2) the defendant was prejudiced by the deficient performance. *United States v. Cronic*, 466 U.S. 648, 658 (1984).

The reasonableness of counsel's challenged conduct must be judged on the facts of the particular case, viewed as of the time of counsel's conduct. *Devier v. Zant*, 3 F.3d 1445, 1450 (11th Cir. 1993). For performance to be deficient, it must be established that, in light of all the circumstances, counsel's performance was outside the wide range of professional competence. *See Strickland*, 466 U.S. at 690. Judicial scrutiny of counsel's performance must be highly deferential, and courts "must avoid second- guessing counsel's performance." *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc). "Courts must 'indulge [the] strong presumption' that counsel's performance was reasonable and that counsel 'made all significant decisions in the exercise of reasonable professional judgment.' " *Id.* (quoting *Strickland*, 466 U.S. at 689). The defendant's burden in this regard, though not insurmountable, is a heavy one. *See Chandler*, 218 F.3d at 1314. For a petitioner to show deficient performance, he "must establish that no competent counsel would have taken the action that his counsel did take." Id. at 1315.

To establish prejudice, a petitioner must demonstrate a reasonable probability that, but for counsel's deficient performance, the result of his trial would have been different. *United States v. Greer*, 440 F.3d 1267, 1272 (11th Cir. 2006). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Rolling v. Crosby*, 438 F.3d 1296, 1300 (11th Cir. 2006). If the defendant fails to show that he was prejudiced by the alleged errors of counsel, this Court may reject the defendant's claim without determining whether the counsel's performance was deficient. *Strickland,* 466 U.S. at 697; *Tafero v. Wainwright*, 796 F.2d 1314, 1319 (11th Cir. 1986).

The two-pronged Strickland test is applicable to ineffective assistance of counsel claims arising out of the plea process. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). As applied

to the plea situation, the first prong of *Strickland* remains the same in that the attorney's conduct must fall within the range of reasonable conduct. *Hill,* 474 U.S. at 58. Counsel owes a lesser duty to a client who pleads guilty than to one who goes to trial, however, and in the former case, counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between entering a guilty plea and going to trial. *Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984). To impart such an understanding to the accused, counsel merely must make an independent examination of the facts, circumstances, pleadings and laws involved, and then offer counsel's informed opinion as to the best course to be followed in protecting the interests of the client. *Id.*

The second prong of the *Strickland* test focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. *Hill,* 474 U.S. at 59. In other words, in order to satisfy the prejudice requirement, a defendant claiming ineffective assistance of counsel during the plea process must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Id*.

None of Whittaker's claims of ineffective assistance of counsel have merit. Likewise, none of Whittaker's substantive claims have merit.

Failure To Explain Consequences of Plea Agreement

Whittaker claims counsel was ineffective in failing to explain the consequences of the plea agreement. However, Whittaker does not give any details about the consequences to which he is referring. The record is clear that the Magistrate Judge fully reviewed the plea agreement with Whittaker prior to Whittaker's entering his guilty plea, including the

potential penalties, application of the sentencing guidelines, the sentence appeal waiver, and the rights Whittaker was giving up by pleading guilty. Doc. cr-150 (Transcript of Change of Plea Hearing).

Further, after explaining the charge to which he was pleading guilty, the Magistrate Judge specifically asked Whittaker if he had reviewed the charge and discussed the case fully with his attorney. The Magistrate Judge also inquired if Whittaker had learned of the evidence against him and explored possible defenses. Whittaker responded affirmatively to all of these inquiries. Whittaker also agreed that he was fully satisfied with the advice and representation provided by his counsel. Doc. cr-150, pp. 13-14. In concluding the hearing, the Magistrate Judge found that Whittaker was competent and that his guilty plea was "knowing, intelligent and voluntary . . ." Doc. cr-150, p. 37. This claim has no merit.

*Booker* Error

Whittaker also claims that his counsel was ineffective for making a "*Booker* error." Doc. cv-4, p. 4. Whittaker contends that his sentence was based on a mandatory sentencing schedule, and that, under an advisory scheme, there is a reasonable possibility the Court would have imposed a lower sentence.

In *United States v. Grinard-Henry*, 399 F.3d 1294 (11th Cir.), *cert. denied*, 544 U.S. 1041 (2005), the Eleventh Circuit held the defendant had waived, "via" a sentence appeal waiver contained in his written plea agreement, his right to appeal his sentence based on the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005). The Eleventh Circuit therefore dismissed the appeal. In this case, Whittaker executed a waiver almost identical to the waiver in *Grinard-Henry*. *See Id.* at 1295.

Furthermore, Whittaker's *Booker* argument is vague and conclusory and, therefore, cannot support a claim of ineffective assistance of counsel. *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991).

Departure for Minor Role

In ground two, Whittaker alleges his counsel made "a poor attempt at getting a minor role departure." Doc. cv-4, p. 4. Whittaker also claims that "a departure for minor role is warranted." Doc. cv-4, p. 6.

Whittaker claims:

> Mr. Whittaker's lack of knowledge or understanding of the scope and structure of the enterprise and the activities of others warrants a departure. It is not just an assumption that there are dozens of participants involved with much more hands on and substantially [sic] culpability (owners, captains, middle, buyers, packagers, etc.). Defendant performed a limited function in this concerted criminal activity. All the other participants stood to gain a lot more than the defendant. From the facts in the case we can conclude that Mr. Whittaker deserved a 4 level departure, [sic] at the very least a 2 level.

Whittaker has not alleged any facts to demonstrate that his counsel made a "poor attempt at getting a minor role departure." (Doc. cv-4, p. 4) While it is true that defense counsel did not request a downward adjustment for minor role or object to the presentence investigation report at sentencing, it is also true that the Government filed a USSG § 5K1.1 motion for a two-level downward departure for Whittaker's substantial assistance and recommended that the Court sentence Whittaker at the low end of the advisory guidelines range after departing. The Court granted the motion, departed downward two levels, and sentenced Whittaker at the low end of the range. Doc. cr-149, p. 10 (Transcript of Sentencing).

The United States Sentencing Guidelines provide for a two-level decrease to a defendant's offense level if the defendant was a minor participant in the offense to which he is being sentenced. USSG §3B1.2. A minor participant is a participant who is "less culpable than most other participants, but whose role could not be described as minimal." *Id.*, comment. (nn. 4, 5). A defendant seeking a mitigating role reduction bears the burden of proving, by a preponderance of the evidence, that he is entitled to the role reduction. *See United States v. De Varon*, 175 F.3d 930, 939 (11th Cir. 1999) (en banc).

In conducting its factual analysis to determine the defendant's total offense level, the Court must measure the defendant's role against the relevant conduct attributed to him in calculating his base offense level. *De Varon*, 175 F.3d at 944 (minor role reduction appropriate "[o]nly if a defendant can establish that [he] played a relatively minor role in the conduct for which [h]e has already been held accountable--not a minor role in any larger conspiracy"). The Court may also measure a defendant's culpability in comparison to that of other participants in the relevant conduct. *Id*. Importantly, a defendant does not merit any reduction unless he is "substantially less culpable than the average participant." USSG §3B1.2, comment. (n.3(A)).

Whittaker offers no evidence that he was substantially less culpable than his codefendants or that he played a minor role in the relevant conduct for which he was held accountable. As a result, he fails to demonstrate that he was entitled to a minor role reduction.

<u>Extraordinary Family Circumstances</u>

In ground three Whittaker claims he should be afforded an 18 U.S.C. § 3553 downward departure based on extraordinary family circumstances, and he alleges that his

counsel was ineffective for not raising this issue at sentencing. Specifically, Whittaker asserts "his family is suffering a great hardship without him, [sic] they relied heavily on him financially and for guidance." Doc. cv-4, pp. 7, 8, 10.

A defendant's choice to participate in a crime almost always proves harmful to his family, and rarely constitutes a reason for the district court to deviate from the applicable sentencing guidelines range. See USSG § 5H1.6 ("In sentencing a defendant . . . family ties and responsibilities are not ordinarily relevant in determining whether a departure may be warranted."); accord *United States v. Allen*, 87 F.3d 1224, 1225 (11th Cir. 1996) (finding that a defendant with the role of primary caretaker for his 70-year-old father with Alzheimer's and Parkinson's diseases is not " extraordinary" and does not merit downward departure); *United States v. McClatchey*, 316 F.3d 1122, 1130 (10th Cir. 2003) ("The fact that a defendant cares for a family member with a mental and physical disability is not by itself sufficient to make the circumstances "exceptional"' so that a downward departure was warranted).

The guidelines range "takes into account [Whittaker's] offense conduct, his personal characteristics and history, just punishment, and adequate deterrence." *United States v. Scott*, 426 F.3d 1324, 1330 (11th Cir. 2005). Thus, the Court ordinarily would expect a sentence within the applicable guidelines range to be reasonable. *United States v. Talley*, 431 F.3d 784, 788 (11th Cir. 2005). "[T]he party who challenges the sentence bears the burden of establishing that the sentence is unreasonable in the light of both th[e] record and the factors in section 3553(a)." *Talley,* 431 F.3d at 788. "In any given case there will be a range of sentences that are reasonable and the district court gets to pick within that range." *United States v. Crisp*, 454 F.3d 1285, 1290 (11th Cir. 2006). In this case, the Court

imposed a sentence at the low end of Whittaker's advisory sentencing guidelines range after departing downward based on the Government's USSG § 5K1.1 motion. The sentence fell within the range of reasonableness considering that the maximum statutory sentence for the charged offense was life imprisonment, 46 U.S.C. App. § 960(b)(1)(B)(ii). *See Talley*, 431 F.3d at 788 (upholding as reasonable defendant's sentence at low end of guidelines range); *United States v. Winingear*, 422 F.3d 1241, 1246 (11th Cir. 2005) (comparing, as one indicia of reasonableness, the prison term imposed against the statutory maximum sentence).

Although Whittaker contends his sentence is presenting a financial hardship on his family, including his wife and four children, he fails to mention that his children are all over the age of 20 and no longer can be considered dependents. Whittaker has not established any basis for the Court to deviate below his applicable guidelines range after the Court departed downward based on the Government's USSG § 5K1.1 motion, and Whittaker's counsel cannot be held ineffective for failing to raise a meritless issue.

Deportation Status

In ground four, Whittaker alleges he should be granted a further downward departure "for collateral consequences due to deportability." He contends that he is not eligible to receive benefits provided under 18 U.S.C. § 3624(c) due to his deportation status and that his counsel was ineffective for not raising this issue at sentencing.

The Eleventh Circuit has ruled that " '(1) the unavailability of preferred conditions of confinement; (2) the possibility of an additional period of detention pending deportation following the completion of the sentence; and (3) the effect of deportation as banishment from the United States and separation from family' were consequences of a defendant's

alienage that did not warrant a departure." *United States v. Veloza*, 83 F.3d 380, 382 (11th Cir. 1996) (citation omitted). Similarly in Whittaker's case, these factors do not require the Court to impose a sentence below the applicable guidelines level. No binding precedent establishes that the Court had to impose a lower sentence because of Whittaker's deportation status.

Furthermore, the collateral consequences that a defendant faces because he is a deportable alien do not support a departure. *Id. See also*, *United States v. Maung,* 320 F.3d 1305 (11th Cir. 2003) (downward departure sentence could not properly be based on desire to shield defendant from immigration consequences of conviction). In *United States v. Restrepo*, 999 F.2d 640 (2d Cir. 1993), the district court relied on collateral consequences stemming from the defendant's status as an alien to support a downward departure. These collateral consequences included ineligibility for assignment to lower-security facilities; post imprisonment detention pending removal, and removal itself. *Id*. at 644-47. The Second Circuit found that those collateral consequences were insufficient to support a downward department and reversed the downward departure on direct appeal.

Whittaker has no due process liberty interest in early release. See, e.g., *Wottlin v. Fleming*, 136 F.3d 1032, 1036 (5th Cir.1998). More generally, inmates do not have any federal constitutional right to participate in rehabilitative programs. Nor does an inmate have any constitutionally protected interest in a particular housing assignment or transfer to a particular prison. *See, e.g., McKune v. Lile ,* 536 U.S. 24, 39 (2002) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."); *Meachum v. Fano*, 427 U.S. 215, 225 (1976) (no right to incarceration at any particular prison). In sum, Whittaker has not shown that his Fifth Amendment due process

rights have been violated. *See also, Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976) (Federal prisoners have no due process right to eligibility for rehabilitative programs.); *Murdoch v. Washington*, 193 F.3d 510, 513 (7th Cir.1999) (no protectible liberty or property interest in attending rehabilitation program); *Wishon v. Gammon*, 978 F.2d 446, 450 (8th Cir.1992)(no right to educational or vocational opportunities); *Canterino v. Wilson*, 869 F.2d 948, 952-54 (6th Cir.1989) (no liberty interest in inmate classification or eligibility for work programs); *Hernandez v. Johnston*, 833 F.2d 1316, 1318 (9th Cir.1987) (no right to particular inmate classification or eligibility for rehabilitative programs); *Pugliese v. Nelson*, 617 F.2d 916, 923 (2d Cir.1980) (same); *Battle v. Anderson*, 564 F.2d 388, 403 (10th Cir.1977) ("[A]n inmate does not have a federal constitutional right to rehabilitation."); *Lyle v. Sivley*, 805 F.Supp. 755, 759-60 (D. Ariz. 1990) (holding that Due Process Clause does not give federal prisoners a protected right to participate in drug treatment programs).

In *Minh v. United States, 2006 WL 2444085 *3* (S.D. Ga. Aug. 22, 2006)*,* the Court held that BOP's use of BICE detainers in deciding prisoners' eligibility for prison programs and early release did not offend equal protection principles. Courts have routinely upheld the Bureau's consideration of BICE detainers in making classification decisions regarding inmates, including such issues as security level and eligibility for prison programs.

Whittaker's argument that deportable aliens are categorically denied transfers to halfway houses, CCC camp status, or drug rehabilitation programs is also misleading. As the Ninth Circuit has pointed out, the BOP excludes all inmates -- not just aliens -- who are subject to detainers from participation in community-based treatment programs. *McLean v. Crabtree*, 173 F.3d 1176, 1185 (9th Cir.1999). The "detainer exclusion," which is based upon the rationale that prisoners with detainers pose an increased flight risk, does not

single out aliens and does not violate the Equal Protection Clause. *Id. See, e.g., Franklin v. Berry*, 909 F.Supp. 21, 27-28 (D . D.C.1995)(upholding Bureau's reliance upon detainers in assigning security classifications to aliens); *Limas v. McNary*, 799 F.Supp. 1259, 1263 (D. Mass.1992)(Bureau's decision to deny deportable aliens prerelease transfer to minimum security institutions did not implicate any constitutional right); *Isaraphanich v. Coughlin*, 715 F.Supp. 119, 120-21 (S.D. N.Y. 1989)(Bureau's reliance on detainers to deny aliens access to prison programs did not violate the Equal Protection Clause); *Femandez-Collado v. I.N.S.*, 644 F.Supp. 741, 744 (D. Conn.1986)("Petitioner has neither a legitimate statutory nor constitutional entitlement to those prison programs from which he may be denied access as a result of the detainer."), *afield* 857 F.2d 1461 (2d Cir. 1987).

Of note, the Bureau clearly possesses the power to exclude inmates from consideration for early release. *See Lopez v. Davis*, 531 U.S. 230, 239-44 (2001) (upholding a Bureau regulation categorically excluding, based upon its general discretion under the statute to grant or deny early release, prisoners convicted of otherwise nonviolent offenses that involved use of a firearm). Furthermore, the Bureau may aim such an exclusion at deportable aliens if it has a rational basis for its decision. *See Mathews v. Diaz*, 426 U.S. 67, 77 (1976).

Finally, Whittaker is correct that his deportability prevents him from participating in Federal Prison Industries ("UNICOR") work assignments. See 28 C.F.R. § 345.35(a). Nevertheless, the Bureau has a rational basis for excluding deportable aliens from consideration for rehabilitative programs, including UNICOR assignments. As one court has explained:

> The [Bureau] does not act in violation of Fifth Amendment equal protection standards in providing programs for prisoners who have a lawful right to remain in the country, whose rehabilitation is of interest to this country and the policy of this society, and in not providing programs for deportable aliens who have no right to be in the country and whom Congress has an interest in deterring from entering or returning .... There is no equal protection violation in different treatment of aliens as to rehabilitation and other programs. The United States may treat deportable aliens and citizens differently. There is no primary interest in reformation of deportable persons. That's an interest of the country to which they may be deported . Deterring further illegal reentry is a legitimate interest of the United States as well as saving expenses. Also, special security may be justified to avoid flight to the border. In the case of American citizens, or lawful residents, reformative programs are a worthy correctional consideration.

*Ruiz-Loera v. United States*, 2000 WL 33710839, at *2 (D. Utah June 23, 2000) (citations omitted); *see also United States v. Tamayo*, 162 Fed. Appx. at 816, 2006 WL 52792, at *3 ("[T]here is a rational basis to deem deportable aliens, who will be sent out of the country after the term of their sentence, ineligible for programs geared toward rehabilitating prisoners who will re-enter society after their release from confinement.").

Because Whittaker has not shown that he is entitled to any relief under 28 U.S.C. § 2255, the Court orders:

That Whittaker's amended motion to vacate Doc cv-4;cr-148 is denied. The Clerk is directed to enter judgment against Whittaker in the civil case and to close that case.

**CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED**

IT IS FURTHER ORDERED that Defendant is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ··· only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at §

2253(c)(2). To make such a showing, Defendant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further, ' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Defendant has not made the requisite showing in these circumstances.

Finally, because Defendant is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on May 1, 2007.

Susan C. Bucklew
SUSAN C. BUCKLEW
United States District Judge

AUSA: James C. Preston

Romelio Inocencio Dawkins Whittaker, pro se